UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

               Plaintiff,               No. 18-cr-20283

v.                                 Hon. Bernard A. Friedman

LACOURIS PACELY,

               Defendant.

### United States' Combined Response and Brief in Opposition to Defendant's Motion for Compassionate Release

This might be a closer case were it not for the simple fact that defendant Lacouris Pacely has served only about one quarter of his prison sentence for serious and dangerous drug offenses. While Pacely suffers from some serious health conditions and seeks compassionate release on the basis of his heightened risk of illness from Covid-19, he is in prison today because he possessed distribution-level quantities of heroin laced with fentanyl and crack cocaine, along with two firearms, in a home he shared with his ten-year old child and others. This Court sentenced him to 87 months in prison for that conduct, after considering the seriousness and dangerousness of his drug offenses, as well as the other § 3553 sentencing factors. Cutting short his sentence by 70-75%, as Pacely now requests, would undermine the important goals served by the § 3553 factors, which this Court appropriately balanced when sentencing him. For these reasons, as detailed

further below, Pacely's (renewed) motion for compassionate release should be denied.

## Background

Pacely's convictions and sentence in this case stem from a March 2018 search of Pacely's home.  *See* ECF No. 28, PageID.131–32.  Michigan State Police executed a search warrant at the residence after developing probable cause that Pacely was dealing drugs from there.  During the search, officers found over 75 grams of heroin laced with fentanyl, over 60 grams of crack cocaine, a loaded 9mm pistol in the top drawer of a dresser, and a shotgun in a closet, all in Pacely's bedroom.  Small baggies of crack cocaine were strewn about the bedroom, and the shotgun was next to a safe, in which both heroin and crack cocaine were found.  Pacely shared this residence with his wife, ten-year old child, and two adult step-children.

Pacely subsequently pleaded guilty to two counts of possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a).  This Court sentenced him on September 17, 2018 to 87 months imprisonment, at the bottom of his guidelines range, and four years of supervised release.  ECF No. 23.

Pacely's instant drug conviction, at the age of 46, marked a return to criminal conduct.  When he was in his late teens through age 20, he associated with a criminal street gang and accumulated multiple convictions for serious firearm

and related offenses.  Specifically, he was convicted of felony carrying a concealed weapon in 1990.  Three years later, in 1993, he was arrested and subsequently convicted of involuntary manslaughter and carrying or possessing a firearm when committing or attempting to commit a felony.  He was sentenced to 10 to 15 years for the involuntary manslaughter and a consecutive 2 years on the gun count.  He was paroled from prison in 2004, at the age of 32.  PSR ¶ 31.

Just over four years after he was released on parole, Pacely was arrested and convicted in 2009 for felony controlled substances possession (less than 25 grams of cocaine) and sentenced to 18 months of probation.  PSR ¶ 35.  Seven years after he was discharged from probation on that case, Pacely committed the instant offense.

Pacely began serving his prison sentence in this case on November 1, 2018. To date, he has served just over 22 months of his 87-month sentence.  In other words, he has served just over 25% of his imposed sentence and just under 30% of his projected sentence when accounting for anticipated good conduct time credit. His projected release date is December 30, 2024.  *See* Exhibit 3 at 3 (BOP Sentence Computation) (Filed Under Seal).[1]

---

[1] In Pacely's case, earning full good conduct time credit of 54 days per year, pursuant to 18 U.S.C. § 3624, for his 87-month sentence would amount to approximately 391 days credit, resulting in an anticipated sentence of approximately 74 months.

Pacely is 48 years old, and he is incarcerated at FCI Loretto in Loretto, PA. At the time the government responded to Pacely's prior motion for release, in early July 2020, FCI Loretto did not have any positive Covid-19 cases at the facility. *See* ECF No. 28, PageID.132.  As of today, September 11, 2020, FCI Loretto is reporting zero inmates who are positive for Covid-19 but does have 7 positive staff members; 58 prisoners and 3 staff have recovered after becoming infected with Covid-19.  No prisoners have died at the facility.  *See* BOP: COVID-19 Cases.

The Bureau of Prisons (BOP) has modified its operations over the past several months to implement its Covid-19 Action Plan and minimize the risk of Covid-19 transmission into and inside its facilities, as described in the government's previous response brief.  *See* ECF No. 28, PageID.134–35.  Part of the BOP's response has included increased Covid-19 testing across its facilities, and notably, virtually all of FCI Loretto's approximately 845 inmates (*see* BOP: FCI Loretto) have been tested for Covid-19, as indicated by the screenshot below from BOP's Covid-19 website (updated September 11, 2020) reflecting that 844 inmates have completed tests.  Pacely himself was tested for Covid-19 in July and received a negative result in early August 2020.  *See* Exhibit 2 at 2, 19 (Updated 2020 BOP Medical Records (6/11/2020 – 9/1/2020) (Filed Under Seal).

# COVID-19 Inmate Test Information

**Completed Tests**
## 52,786
Number of inmates who have
completed testing.

**Pending Tests**
## 1,801
Number of inmates with pending tests
and no previous completed test.

**Positive Tests**
## 13,052
Number of inmates that have ever had
a positive test.

### About the Data

These data are compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting. **Not all tests are conducted by and/or reported to BOP.** The number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once. The number of tests recorded per site reflects the number of persons at the specific facility who have been tested, whether at that site or at a prior facility.

| Facility Name ▲ | No. of Inmates with Completed Tests | No. of Inmates with Pending Tests | No. of Inmates with Positive Tests |
|---|---|---|---|
| LEXINGTON FMC | 1017 | 0 | 216 |
| LOMPOC FCI | 1000 | 0 | 784 |
| LOMPOC USP | 766 | 83 | 150 |
| LORETTO FCI | 844 | 0 | 58 |
| LOS ANGELES MDC | 242 | 5 | 9 |

Another part of BOP's response to the Covid-19 pandemic has been increasing the placement of federal prisoners in home confinement. *See* ECF No. 28, PageID.135–38. Under the Attorney General's directives, the BOP is required to identify the inmates most at risk from Covid-19 and "to consider the totality of circumstances for each individual inmate" in deciding whether home confinement is appropriate. 03-26-2020 Directive to BOP, at 1. As of September 11, 2020, this process has already resulted in at least 7,668 inmates being placed on home confinement since the Covid-19 pandemic began, *see* BOP Covid-19 Website, and approximately 126 of those inmates are from the Eastern District of Michigan. Pacely is no exception to this process: he was referred by FCI Loretto staff for consideration for home confinement "although he does not meet all eligibility criteria," Exhibit 4 at 4 (BOP Progress Report) (Filed Under Seal), but the BOP denied his referral for home confinement on July 28, 2020 (according to BOP counsel's representation to undersigned government counsel).

As FCI Loretto staff noted in that referral, and as documented in his BOP medical records, Pacely does have underlying medical conditions. Those conditions include Type 2 diabetes, obesity, hypertension, asthma, and an unspecified respiratory disorder. *See* Exhibit 1 at 23 (2020 BOP Medical Records (as of 6/12/2020) (Filed Under Seal); Exhibit 2 at 13–14 (Updated 2020 BOP Medical Records (6/11/2020 – 9/1/2020) (Filed Under Seal).

Pacely submitted a request for compassionate release to the Warden at FCI Loretto on or about May 14, 2020, and Pacely received a response from the Warden on May 29, 2020 denying the request.  *See* ECF No. 25, PageID.125.

Prior to receiving the Warden's denial, Pacely filed a *pro se* motion before this Court on or about May 18, 2020.  ECF No. 24.  His motion requested release to home confinement, citing his medical conditions and the Covid-19 pandemic. After the government filed a response opposing his request, *see* ECF No. 28, this Court issued an Order on August 3, 2020, denying Pacely's request for home confinement on jurisdictional grounds, and denying the motion without prejudice to the extent it requested compassionate release, on exhaustion grounds.  ECF No. 35.  (As noted above, on July 28, while his first motion was still pending before this Court, the BOP denied Pacely's home confinement referral.)

On July 15, 2020, this Court appointed the Federal Community Defender to represent Pacely in connection with his pursuit of compassionate release.  ECF No. 33.  Thereafter, on August 26, 2020, Pacely filed a new motion for compassionate release, again seeking release based on his medical conditions and the associated risks of Covid-19 infection.  ECF No. 38.

## Argument

Pacely's motion for compassionate release and a reduced sentence should be denied.  Although he has met the mandatory administrative exhaustion requirement

and also satisfies the first eligibility criterion for compassionate release because certain of his medical conditions place him at higher risk of illness from Covid-19, Pacely nonetheless does not qualify for this extraordinary form of relief—and what, in effect, would be a 70-75% sentence reduction—because he poses a danger to the community, and the § 3553 sentencing factors weigh against release.

### A.    Legal principles.

A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow, *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001), and compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

*First*, compassionate release requires exhaustion of the administrative process within the BOP. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832–36 (6th Cir. 2020) (holding statutory exhaustion requirement is mandatory).

*Second*, even if a defendant exhausts, he must show "extraordinary and compelling reasons" for compassionate release, and release must be "consistent

8

with" the Sentencing Commission's policy statements.  18 U.S.C. § 3582(c)(1)(A).

As with the identical language in § 3582(c)(2), compliance with the policy

statements incorporated by § 3582(c)(1)(A) is mandatory.  *See Dillon v. United

States*, 560 U.S. 817 (2010); *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir.

2014).  To qualify, a defendant must have a medical condition, age-related issue,

family circumstance, or other reason that satisfies the criteria in USSG

§ 1B1.13(1)(A) & cmt. n.1, *and* he must "not [be] a danger to the safety of any

other person or to the community," USSG § 1B1.13(2).

     *Third*, even if a defendant is eligible for compassionate release, a district

court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support

release.  18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13.  As at sentencing, those

factors require the district court to consider the nature and circumstances of the

offense, the defendant's history and characteristics, the need to promote respect for

the law and provide just punishment for the offense, general and specific

deterrence, and the protection of the public. 18 U.S.C. § 3553(a).

## B.    Pacely has satisfied the mandatory exhaustion requirement.

     Pacely has satisfied the mandatory exhaustion requirement, and therefore the

Court should resolve his motion on the merits.  In its response to Pacely's first

motion for release, the government noted it considered Pacely to have exhausted

his administrative remedies because, by the time the government filed its

opposition, at least 30 days had passed since Pacely submitted his request to the Warden.  *See* ECF No. 28, PageID.133, 142.  This Court disagreed, finding that Pacely had failed to exhaust because he filed his motion in court (signed on May 18; docketed on May 20) before his administrative request had been denied (on May 29), and before 30 days had passed from the date he submitted his administrative request (on May 14).  *See* ECF No. 35, PageID.205; *see also* 18 U.S.C. § 3582(c)(1)(A); *Alam*, 960 F.3d at 832–36.  By now, however, Pacely has satisfied the exhaustion requirement: his instant motion was filed on August 26, 2020, which is more than 30 days after he submitted his administrative request to the Warden.

### C.     Pacely meets the first eligibility threshold for compassionate release under the mandatory criteria in USSG § 1B1.13.

Congress tasked the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for [a] sentence reduction" under § 3582(c)(1)(A), as well as developing "the criteria to be applied and a list of specific examples" for when release is permitted.  28 U.S.C. § 994(t).  The compassionate-release statute thus permits a sentence reduction only when "consistent with" the Sentencing Commission's policy statements.  18 U.S.C. § 3582(c)(1)(A).  Because the Sentencing Commission fulfilled Congress's

directive in USSG § 1B1.13, compliance with that policy statement is mandatory
for any defendant seeking compassionate release under § 3582(c)(1)(A).[2]

Section 1B1.13 cabins compassionate release to a narrow group of non-
dangerous defendants who are most in need.  That policy statement limits
"extraordinary and compelling reasons" to four categories: (1) the inmate's
medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and
(4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which
the Bureau of Prisons has set forth in Program Statement 5050.50.  USSG
§ 1B1.13 cmt. n.1; *see also United States v. Harrington*, No. 17-CR-20330, 2020
WL 3791531, at *2 (E.D. Mich. July 7, 2020) (Edmunds, J.) (noting "[t]he
applicable Sentencing Commission policy statement limits compassionate release
to a narrow group of defendants," and citing the four categories identified in USSG
§ 1B1.13 cmt. n.1).  The commentary to Section 1B1.13 further provides that an
inmate's medical condition would qualify as an "extraordinary and compelling

---

[2] The Supreme Court has already reached the same conclusion for compliance with USSG
§ 1B1.10 under 18 U.S.C. § 3582(c)(2), based on the statutory language there.  *Dillon v. United
States*, 560 U.S. 817, 827 (2010).  And the statutory language in § 3582(c)(1)(A) is identical to
the language in § 3582(c)(2).  *Compare* § 3582(c)(1)(A) (requiring that "such a reduction is
consistent with applicable policy statements issued by the Sentencing Commission"), *with*
§ 3582(c)(2) (same).  When Congress uses the same language in the same statute, it must be
interpreted in the same way.  *United States v. Marshall*, 954 F.3d 823, 830 (6th Cir. 2020).  In
both contexts, then, the Sentencing Commission's restraints "on a district court's sentence-
reduction authority [are] absolute."  *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014)
(citing *Dillon*, 560 U.S. 817); *accord United States v. Saldana*, 807 Fed. App'x 816, 819–20
(10th Cir. 2020).  The First Step Act did not change that.  It amended only *who* could move for
compassionate release under § 3582(c)(1)(A).  It did not amend the substantive requirements for
release.  *Saldana*, 807 Fed. App'x at 819–20.  Section 1B1.13 remains binding.

reason" if either (i) "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," or (ii) "[t]he defendant is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1.

Here, Pacely relies on the Covid-19 pandemic and his underlying health conditions as grounds for his release.  The government acknowledges—as it did in its prior response, *see* ECF No. 28, PageID.144–45—that certain of Pacely's medical conditions meet the "extraordinary and compelling reason" threshold of eligibility for compassionate release during the Covid-19 pandemic.  But some qualifications of the government's position merit mention.

As an initial matter, the Covid-19 pandemic does not, by itself, qualify as the type of inmate-specific condition permitting compassionate release.  The BOP has worked diligently to implement measures to reduce the risk from Covid-19 to inmates.  *See Wilson v. Williams*, 961 F.3d 829, 833-34, 840-41 (6th Cir. 2020).  Thus, "the mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate

release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *cf. Wilson*, 961 F.3d at 844-45.

To be sure, the facility where Pacely is incarcerated, FCI Loretto, has experienced Covid-19 infections among prisoners and staff. But, as mentioned above, the BOP, to include FCI Loretto, has made progress in controlling the virus and increasing testing. As of today, zero prisoners (out of approximately 845 total prisoners) and seven staff members at FCI Loretto have positive Covid-19 tests. Moreover, virtually all of FCI Loretto's prisoners—including Pacely—have received a Covid-19 test. Accordingly, Pacely—like the defendant in this Court's previous *Reese* case—"has not shown that the risk of infection at FCI-Loretto is unacceptably high." *United States v. Reese*, No. 17-CR-20531-04, 2020 WL 4726936, at *2 (E.D. Mich. Aug. 14, 2020) (Friedman, J.) (noting that, at that time, the BOP was reporting 35 positive inmates at FCI Loretto out of a population of 809; the BOP had reduced the prison population by granting home confinement to thousands of prisoners; and the BOP had taken significant steps to minimize the spread of Covid-19 virus at all BOP facilities).

Nevertheless, the government acknowledges that in the context of the Covid-19 pandemic, Pacely does have two medical conditions—Type 2 diabetes and obesity—which the CDC has identified as conditions that place him "at increased

risk" for severe illness in the event he contracts Covid-19.  *See* Exhibit 1 at 23;
Exhibit 2 at 13–14; CDC: People at Increased Risk - People with Certain Medical
Conditions (as updated) (identifying the confirmed medical conditions that
increase someone's risk from Covid-19).  With respect to obesity, the CDC advises
that a body mass index (BMI) of 30 or above qualifies as obese and "increases
[one's] risk of severe illness from COVID-19."  CDC: People Who Are at
Increased Risk for Severe Illness - Obesity.  The government does not concede that
obesity, per se, qualifies as an "extraordinary and compelling reason," because in
many cases a person with a BMI over 30 may have a physical condition of obesity
from which he or she *can* be expected to recover, with diet, exercise, and/or
treatment.  *Cf.* USSG § 1B1.13 cmt. n.1.  In Pacely's case, however, the
government acknowledges that his obesity does meet the "extraordinary and
compelling reason" threshold because his BMI is well above 30, and his medical
records indicate it has been a longstanding, persistent condition.  For instance, his
PSR, prepared in 2018, indicated Pacely was 6'0" tall and weighed 350 pounds,
which calculates to a BMI of 47.5.  *See* PSR ¶ 57; CDC: Adult BMI Calculator.
By April 22, 2020, Pacely's weight had dropped to 284 pounds, which calculates
to a BMI of 38.5.  *See* Exhibit 1 at 8.  But his most recent weight measurement in
his BOP medical records was a slight increase to 290 pounds on July 2, 2020,
which calculates to a BMI of 39.3.  *See* Exhibit 2 at 3.

Accordingly, based on the CDC's current guidance, which is informed by available medical data, the government acknowledges that Pacely's Type 2 diabetes and his (persistent) obesity place him at higher risk of severe illness should he become infected with Covid-19.  And, therefore, he satisfies the first eligibility threshold for compassionate release during the pandemic.  *See* USSG § 1B1.13(1)(A) & cmt. n.1(A).[3]

### D.   Pacely is not eligible for compassionate release under the other mandatory criteria in USSG § 1B1.13.

Pacely, however, remains ineligible for compassionate release because he is a danger to the community.  While the government recognizes and commends Pacely's apparent rehabilitation efforts, including the multiple courses he has completed in prison and his clean disciplinary record, *see* ECF No. 38, PageID.230–31; Exhibit 4 at 2–4, the fact remains that he has a lengthy criminal history, he exhibited recidivism later in life at age 45 with his instant offense conduct, and that conduct involved dealing heroin laced with fentanyl, one of the most potent and dangerous drugs available today.

---

[3] As Pacely's motion notes, he suffers from additional medical conditions, as well, including hypertension, asthma, and an unspecified respiratory disorder.  But the CDC currently advises that moderate to severe asthma and hypertension are conditions that only "might" put an individual at an increased risk.  *See* CDC: People at Increased Risk - People with Certain Medical Conditions (as updated).  As stated in its prior response, *see* ECF No. 28, PageID.145–46, the government does not concede that any of these other medical conditions—to include Pacely's asthma, which does not appear to be "moderate to severe"—satisfy the first eligibility threshold for compassionate release during the pandemic.  *See* USSG § 1B1.13(1)(A) & cmt. n.1(A).

Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." As with the other requirements in § 1B1.13, this prohibition on releasing dangerous defendants applies to *anyone* seeking compassionate release. 18 U.S.C. § 3582(c)(1)(A) (requiring that release be "consistent with" § 1B1.13); *United States v. Kincaid*, 802 Fed. App'x 187, 188 (6th Cir. 2020) (confirming that a released defendant must "not represent a danger to the safety of any other person or the community"). Although a court must also evaluate the defendant's dangerousness when balancing the § 3553(a) factors, dangerousness alone is a per se bar to release under USSG § 1B1.13(2). *United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020); *United States v. Oliver*, No. 2:17-cr-20489, 2020 WL 2768852, at *7 (E.D. Mich. May 28, 2020).

An evaluation of dangerousness under § 3142(g)—which § 1B1.13(2) references for its dangerousness determination—requires a comprehensive view of community safety, "a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam). Indeed, even when considering *pretrial* detention under § 3142(g), "[t]he concept of a defendant's dangerousness encompasses more than merely the danger of harm involving physical violence." *United States v. Williams*, No. 20-1413, 2020 WL 4000854, at *1 (6th Cir. July 15, 2020) (citing *United States v. Vance*,

851 F.2d 166, 169–70 (6th Cir. 1988)).  That reasoning applies even more strongly post-judgment, when the defendant's presumption of innocence has been displaced by a guilty plea or jury's verdict and when "the principle of finality" becomes "essential to the operation of our criminal justice system."  *Teague v. Lane*, 489 U.S. 288, 309 (1989).

Section 1B1.13(2) is thus a significant hurdle to release.  It bars the release of violent offenders.  It also bars the release of most drug dealers, "even without any indication that the defendant has engaged in violence." *United States v. Stone*, 608 F.3d 939, 947–48 & n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community."); *Knight*, 2020 WL 3055987, at *3.

Here, because Pacely's release would endanger the community, § 1B1.13(2) prohibits reducing his sentence under § 3582(c)(1)(A).  After a history of serious offenses at a young age—including felony convictions for involuntary manslaughter and firearm offenses and the associated significant terms of imprisonment—Pacely was undeterred and returned to criminal conduct in his 30s, obtaining a felony drug conviction.  And even in his mid-40s—by which time many prior offenders have aged out of criminal conduct—Pacely again returned to crime with his drug distribution conduct in the instant case.

While Pacely's criminal history and recidivism over time is significant cause for concern, those concerns are only amplified by the nature of his conduct in this case.  Pacely dealt crack cocaine and heroin laced with fentanyl, one of the most potent and dangerous drugs available today that is driving the current and ongoing opioid drug abuse (and overdose) epidemic in the United States.  Moreover, he did so from his family's home, which he shared with his young child, and with a handgun and shotgun readily available.  His conduct put his family and the community at risk—risks that ranged from drug abuse, overdose, and possible death, to gun violence often associated with drug dealing.  And he did it just over two years ago, while in his mid-40s, when he should have known better.

These considerations are particularly relevant where, as here, Pacely is requesting that he be released to live at home, with his wife and young daughter.  *See* ECF No. 38, PageID.231–33.  While the house address may be different today, living with his wife and child in a home in the recent past did not prevent Pacely from distributing drugs while armed from that home.  In sum, Pacely has demonstrated a willingness to return to dangerous, criminal conduct, at a mature age, while around his family members, and from the confines of his home.  Accordingly, Pacely is a danger to the community and is not eligible for compassionate release.

**E.     The 18 U.S.C. § 3553(a) factors weigh against compassionate release.**

Finally, this Court should also deny Pacely's motion because he has failed to establish that the § 3553(a) sentencing factors weigh in favor of granting release. In addition to the dangerous nature and circumstance of his offense (discussed above), the other § 3553 factors weigh against release, too, because reducing Pacely's sentence by 70-75% would undermine the need for the sentence to promote respect for the law, provide just punishment, and deter criminal conduct.

Even when an inmate has shown "extraordinary and compelling reasons" and demonstrated that he is not dangerous, he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. *See Knight*, 2020 WL 3055987, at *3 ("The § 3553(a) factors . . . weigh against his request for compassionate release."); *United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *3–*5 (E.D. Mich. May 15, 2020) (holding that the "[d]efendant's circumstances do not warrant compassionate release . . . under 18 U.S.C. § 3553(a)"); *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 Fed. App'x 187, 188–89 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors). So even if

the Court were to find Pacely eligible for compassionate release, the § 3553(a)

factors should still disqualify him.

Here, the nature and circumstances of Pacely's criminal conduct were

serious and dangerous, for the reasons discussed above: he dealt dangerous and

addictive drugs, while armed with guns, from a residence where his young child

lived.  Moreover, Pacely's history and characteristics, including his criminal

history and his return to criminal conduct at a mature age, also militate against

release.

Next, Pacely has served just over 22 months of the 87-month sentence this

Court imposed after weighing the § 3553 factors just two years ago, in September

2018.  Put differently, he has served just over 25% of his imposed sentence and

just under 30% of his projected sentence; granting him compassionate release now

would amount to a 70-75% sentence reduction.  Such a result would seriously

undermine several important goals served by the § 3553 sentencing factors.

In particular, this Court appropriately considered the need for its sentence to

promote respect for the law, provide just punishment, and deter criminal conduct

when it sentenced Pacely two years ago.  This Court also considered the need to

avoid unwarranted sentence disparities among similarly situated defendants when

it sentenced Pacely to 87 months imprisonment, which was a within-guidelines

sentence.  Granting the extraordinary relief requested here and reducing Pacely's

sentence by three-quarters would seriously undermine those sentencing goals.  *See United States v. Reese*, No. 17-CR-20531-04, 2020 WL 4726936, at *3 (E.D. Mich. Aug. 14, 2020) (Friedman, J.) (denying compassionate release, finding that releasing defendant who had served 20% ("only a fraction") of a 120-month sentence for heroin distribution "would seriously undermine . . . [the] important sentencing objectives" of "reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment for the offense"); *see also Knight*, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020) ("Allowing [defendant] to be released after only serving about a third of his sentence would not promote respect for the law or proper deterrence, provide just punishment, and avoid unwarranted sentencing disparities.").

In support of his argument for release, Pacely contends that "[t]he compassionate release statute does not preclude relief for people convicted of serious charges and courts have granted compassionate release to people who have served less than half of their sentence and less than a mandatory minimum."  ECF No. 38, PageID.229.  True enough.  But the cases he cites in support of this proposition are outliers.  (In fact, in the very first case he cites in support, *Guzman*, the Court expressed its *reluctance* to grant compassionate release, "given the seriousness of Defendant's crime of conviction *and the fact that he has only completed about half of his sentence*," and noted its preference that the defendant

be transferred to a different BOP facility.  *United States v. Guzman*, No. 13-CR-576-1, 2020 WL 2781713, at *1 (N.D. Ill. May 28, 2020) (emphasis added).  But the Court nonetheless granted that defendant's motion in light of the then-existing Covid-19 outbreak conditions at FCI Elkton.)

Instead, as many Judges in this district have recognized, reducing a prisoner's sentence by a dramatic percentage would undermine important § 3553 sentencing considerations.  *Compare United States v. Jerome Wilson*, No. 17-CR-20787, ECF No. 39 (E.D. Mich. Sept. 8, 2020) (Parker, J.) (granting compassionate release, after government had conceded "extraordinary and compelling reason," where defendant had served *more than 60%* of his 57-month sentence for felon in possession of a firearm and was eligible for home detention in six months), *with United States v. Dupree Rich*, No. 17-CR-20032, ECF No. 56 (E.D. Mich. Sept. 9, 2020) (Cox, J.) (denying compassionate release, after government had conceded "extraordinary and compelling reason," where defendant had a lengthy criminal history and bond violations, and had served *less than half* of his 100-month sentence for possession with intent to distribute cocaine), *and United States v. Rudolph Williams*, No. 06-CR-20411, ECF No. 330 (E.D. Mich. Sept. 8, 2020) (Cleland, J.) (denying compassionate release, after government had conceded "extraordinary and compelling reason," where defendant convicted of drug offense and drug-related murder would pose a danger to the community if released, and

where court "[did] not find that the sentencing factors it weighs most heavily under

18 U.S.C. § 3553(a) justify Defendant's release nearly six years yearly").  In sum,

Pacely is not eligible for compassionate release due to the danger his release would

pose to the community, and the § 3553(a) factors similarly weigh against release.

    **F.**    **If the Court were to grant Pacely's motion, it should impose a term of supervised release equal to his unserved prison term and order home confinement.**

If the Court were inclined to grant Pacely's motion despite the government's

arguments above, the Court should impose a term of supervised release equal to his

unserved prison term and order, as a condition of that supervised release, that he be

confined to his home.  *See United States v. Spencer*, 2020 U.S. App. LEXIS 28051,

*4-5 (6th Cir. Sept. 2, 2020) ("if the district court reduces a defendant's sentence

under § 3582(c)(1)(A) to time served, it can impose a term of supervised release

equal to the unserved time and order, as a condition of that supervised release, that

the defendant be confined to his home") (citing 18 U.S.C. § 3853(d) and USSG

§ 5F1.2).

## Conclusion

For the foregoing reasons, defendant Lacouris Pacely's motion for compassionate release (ECF No. 38) should be denied.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

 /s/ William M. Sloan
William M. Sloan
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
william.sloan2@usdoj.gov
(313) 226-9611

Dated: September 11, 2020

## <u>Certificate of Service</u>

I HEREBY CERTIFY that on September 11, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, for uploading and service by electronic notice to counsel and parties authorized to receive electronically Notices of Electronic Filing.

*/s/ William M. Sloan*
William M. Sloan
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
william.sloan2@usdoj.gov
(313) 226-9611